**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

ANTHONY GIVENS — PLAINTIFF

V. — Civil Action No.3:04-cv-889 HTW-LRA

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY, et al. — DEFENDANTS

## ORDER GRANTING SUMMARY JUDGMENT

Before the court is defendants' motion for summary judgment [docket # 33]. The defendants here are: North American Specialty Insurance Company; Claims Control, Inc.; McClure Lawn Irrigation, Inc.; and Susan Athanasopoulos Huffine. The plaintiff is Anthony Givens; he opposes the motion. Even so, the court is persuaded to grant defendants' motion, having been fully briefed and having heard the arguments of the parties on the strength of plaintiff's bad faith claim against the defendants relative to their accused failure to pay insurance policy proceeds.

### Jurisdiction

Plaintiff filed this insurance dispute in Hinds County, Mississippi, Circuit Court on August 25, 2004. Plaintiff subsequently amended his complaint on October 15, 2004. Defendants removed the suit to this court on October 28, 2004, pursuant to Title 28 U.S.C. § 1441[1] and § 1446.[2] Defendants assert federal jurisdiction is proper under a

---

[1]Title 28 U.S.C. § 1441 (a) provides: Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the

claim of diversity jurisdiction, as provided for in Title 28 U.S.C. § 1332.

Plaintiff Anthony Givens [Givens] is a Mississippi resident. Defendant North American Specialty Insurance Company [North American] is a New Hampshire corporation doing business in Mississippi. Defendant Claims Control, Incorporated, [Claims Control] is a Florida corporation doing business in Mississippi. Defendant Susan Huffine-Athanasopoulos [Huffine] is a Florida resident. Defendant McClure Lawn Irrigation [McClure], a Mississippi corporation and a non-diverse defendant, was earlier held to have been improperly joined in this action. On March 31, 2006, the court entered an order dismissing McClure and denying remand [docket # 14].

**Facts**

The essential facts alleged in the original and amended complaints are that plaintiff was injured on October 11, 2002, in the course of his employment with McClure. As a result of this alleged spinal injury, he was temporarily totally disabled beginning on November 19, 2002. The claim was processed by Claims Control and its employee Huffine, in her role as insurance adjuster.

On December 11, 2002, Givens' attorney faxed Claims Control and Huffine a letter requesting disability payments. On December 17, 2002, Givens' physician

---

district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

[2]Title 28 U.S.C. § 1446 (a) provides: A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

recommended spinal rehabilitation therapy. Givens contends that defendants initially failed to respond to his requests for precertification and payment for treatment.

On February 3, 2003, North American, McClure's insurance carrier, agreed to pay temporary total disability payments for the dates November 19, 2002, through February 10, 2003. Following this determination, on February 6, 2003, North American reimbursed Givens for prescriptions obtained on November 28; December 9; and December 17, 2002. On April 3, 2003, Givens' treating physician recommended surgery, which North American precertified on May 28, 2003. Surgery was performed on June 23, 2003.

Givens alleges North American acted in bad faith by not promptly investigating and precertifying treatment as required under Mississippi Worker's Compensation law, and that the improper delays caused him unnecessary pain and suffering. Givens further charges that North American used its unequal bargaining position to force acceptance of an inadequate settlement of his claim.

Givens seeks actual and punitive damages in an unstated amount. Defendants admit that on January 14, 2003, the Mississippi Worker's Compensation Commission issued Notice that the carrier's answer had not been received by the Commission within the 23 days required, but denied Givens' other allegations of wrongdoing.

**Summary Judgment Standard**

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251,106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex*

*Corporation v. Catrett,* 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir. 2002). "A fact is 'material' if it 'might affect the outcome of the suit under governing law.'" *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001). The nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corporation,* 477 U.S. at 322-23; *Anderson,* 477 U.S. at 257; *Matsushita Electric Industrial Company v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir. 1996); *Brown v. City of Houston,* 337 F.3d 539, 540 (5th Cir. 2003); *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir.), *cert. denied,* 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001). Furthermore, only reasonable inferences can be drawn from the evidence in favor of the nonmoving party. *Eastman Kodak Company v. Image Technology Services, Inc.,* 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Anderson,*

477 U.S. at 247-48; *Hart v. O'Brien,* 127 F.3d 424, 435 (5th Cir.1997), cert. denied, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown,* 337 F.3d at 540; *Bridgmon v. Array Systems Corporation,* 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.,* 292 F.3d 466, 468 (5th Cir.), *cert. denied,* 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corporation,* 477 U.S. at 322.

## Analysis

Defendants claim Givens has failed to present sufficient facts to support his claim of bad faith against any of the named defendants. North American says that since it acted as insurance carrier but did not adjust or administer the claim, North American should bear no liability. Huffine, as claims adjuster, says she simply acted on behalf of her employer and, therefore, bears no individual liability. Finally, all defendants contend that the facts presented support their contention that the claim was properly investigated, timely approved, and fully paid.

Givens alleges that Huffine was generally inept and unresponsive in the processing of his claim. Givens further contends that the time elapsed between the injury and payment was unreasonable and that this unresponsiveness and delay constitutes proof of bad faith.

For Givens to prevail in this action, he must show: 1) the existence of an applicable worker's compensation policy and claim; 2) that the carrier denied the claim without a legitimate or arguable reason; and 3) that the denial of benefits constituted a willful and intentional or malicious wrong. *Rogers v. Hartford Acc. & Indem. Co.*, 133 F.3d 309, 312 (5th Cir. 1998). Givens must furnish proof of an intentional tort to circumvent the exclusive remedies under worker's compensation law and to seek punitive damages. *Id.* at 315. Givens's claim was not denied, but he claims that he was injured by delays in claim processing. The law does not impose liability for a delay if it results from a reasonable cause, or if it results from simple negligence. *See Liberty Mutual Ins. Co. v. McKneely*, 862 So.2d 530, 533 (Miss. 2003).

The evidence presented shows that the claim was initially handled as a "medical only" claim, but that it was converted to a temporary total disability claim after Givens provided supporting documentation. The evidence further establishes that the delay in claim processing of several weeks to possibly a couple of months was due to lack of documentation and an ongoing investigation of the claim, and as such was at least arguably reasonable.

A portion of the complaint deals with errors in computing weekly salary and mileage checks. It is undisputed that the errors were corrected once discovered, and that the claim was paid in full.

The following undisputed facts confirm the above, i.e., undisputed facts relative to payment of indemnity benefits; calculation of compensation rate; authorization for medical treatment; and mileage reimbursement payments:

**Payment of Indemnity Benefits**

1. On November 20, 2002, Claims Control, Inc., received notice of Anthony Givens' claim from McClure Lawn Irrigation, Inc., by way of Mississippi Workers' Compensation - First Report of Injury or Illness form. On this same date, the claim was set up and assigned to Susan Huffine-Athanasopoulos for handling.

2. On November 20, 2002, Claims Control, Inc., received a letter from McClure Lawn Irrigation, Inc., detailing plaintiff's accident and work history following the accident.

3. On November 20, 2002, Pamela Sangster, Medical Case Manager for Claims Control Inc., contacted the plaintiff concerning the injury and advised they would contact Dr. Barrett's office to authorize an evaluation and treatment. Also, Pam Sangster requested medical records from various medical providers.

4. As of November 23, 2002, the file was set up as a "medical only" claim as it was undetermined if any of the time plaintiff had lost from work was as a result of his injury.

5. On November 25, 2002, Kelley Investigations, Inc., took a telephone recorded statement of plaintiff wherein plaintiff stated that he had not returned to work since the incident on October 30, 2002. This information was inconsistent with the information previously obtained from McClure Lawn Irrigation, Inc.

6. On December 9, 2002, Claims Control Inc., received from plaintiff the

"Employee Questionnaire" form that had been sent to him on November 21, 2002. The form was incomplete regarding time he missed from work as a result of his injuries, the physicians who had excused him from work, and his prior medical treatment.

7. On December 11, 2002, Darryl Gibbs issued a letter to Susan Huffine-Athanasopoulos advising of his representation of the plaintiff and requested that temporary total disability payments be initiated. No documentation was provided in support of any specific periods of temporary total disability.

8. On December 30, 2002, Dr. Barrett's office faxed his office note of December 17, 2002, to Pamela Sangster. On or about January 3, 2003, Ms. Sangster acknowledged receipt of Dr. Barrett's note. On or about January 14, 2003, Susan Huffine-Athanasopoulos acknowledged receipt of Dr. Barrett's note. This was the first documentation she received that plaintiff had been taken off of work by a physician, related to his injury.

9. On January 13, 2003, McClure Lawn Irrigation, Inc., faxed a copy of the Petition to Controvert that had been filed by Darryl Gibbs on December 18, 2002. In his Petition, it was alleged that the period of temporary total disability was "December 17, 2002 to the present." No supporting documentation was attached regarding any period of temporary total disability. On January 14, 2003, Susan Huffine-Athanasopoulos referred the Petition to Attorney Joe Deaton to respond on behalf of the Employer and Carrier.

10. On January 15, 2003, Susan Huffine-Athanasopoulos was advised by Joe Deaton and/or his paralegal that based on review of the file, it was not clear whether an accident had taken place at work. Susan Huffine-Athanasopoulos subsequently sent additional file material to Mr. Deaton for review and evaluation.

11. On January 27, 2003, Susan Huffine-Athanasopoulos received from Mr. Deaton a copy of a work excuse from Dr. Korri, dated November 19, 2002. This excuse had been sent to Mr. Deaton by Darryl Gibbs. This was the first documentation Susan Huffine-Athanasopoulos received that plaintiff had been taken off work effective November 19, 2002, by a physician.

12. On or about February 3, 2003, defense counsel recommended that payment of temporary total disability benefits be paid effective November 19, 2002.

13. On February 5, 2003, temporary total disability benefits commenced and a check was issued to the plaintiff in the amount of $2,062.56, representing temporary total disability benefits retroactive to November 19, 2002.

**Calculation of Compensation Rate**

14. On December 9, 2002, a wage statement was received from McClure Lawn Irrigation, Inc., reflecting plaintiff's weekly earnings July 5, 2002, through October 10, 2002. Susan Huffine-Athanasopoulos calculated an average weekly wage, based on these earnings, of $257.81 and a corresponding weekly compensation rate of $171.88.

15. In July of 2003, the file was transferred to defense attorney Philip Embry for handling. Mr. Embry requested and received another wage statement from McClure Lawn Irrigation, Inc., representing plaintiff's earnings from April 19, 2002, through October 10, 2002. Mr. Embry calculated the plaintiff's average weekly pay to be $295.69 with a corresponding weekly compensation rate of $197.14.

16. On July 23, 2004, Mr. Embry wrote to Susan Huffine-Athanasopoulos and recommended she pay an underpayment in temporary total disability benefits, based on his calculation of the average weekly wage, plus penalties and interest.

17. On August 19, 2004, a check was issued to the plaintiff, in the amount of $3,578.16, representative of the difference in compensation rates of $171.88 and $197.14, plus accumulated penalties and interest.

**Authorization For Medical Treatment**

18. According to Dr. Barrett's office notes of April 3, 2003, a discogram was recommended this date. On April 21, 2003, Pamela Sangster authorized the discogram.

19. On May 1, 2003, plaintiff underwent his discogram.

20. On or about May 15, 2003, Pamela Sangster received a copy of Dr. Barrett's May 6, 2003, office note, wherein he recommended surgery for the first time. On May 15, 2003, Ms. Sangster faxed a pre-certification form to Dr. Barrett's office for completion. On May 20, 2003, Ms. Sangster faxed a second request for completion of a surgery pre-

certification form to Dr. Barrett's office.

21. On May 29, 2003, Pamela Sangster received the needed pre-certification information from Dr. Barrett's office and the surgery was approved and scheduled that same date.

22. On June 23, 2003, plaintiff underwent surgery.

**Mileage Reimbursement Payments**

23. On December 9, 2002, Susan Huffine-Athanasopoulos received the first mileage reimbursement request form from the plaintiff, requesting reimbursement for six dates in 2002. This request was forwarded to Paula Klapow for processing.

24. On December 19, 2002, plaintiff was issued a mileage reimbursement check, in the amount of $23.36, representative of sixty-four miles at a rate of $0.365 per mile, the appropriate mileage reimbursement rate in 2002.

25. On April 23, 2003,Susan Huffine-Athanasopoulos received a second mileage reimbursement request form from plaintiff, requesting reimbursement for one date in 2002 and fifteen dates in 2003. This request was forwarded to Paula Klapow for processing.

26. On April 29, 2003, plaintiff was issued a mileage reimbursement check, in the amount of $134.14, representative of 419.2 miles at a rate of $0.32 per mile.

27. On May 7, 2003, a copy of a letter dated May 6, 2003, from Darryl Gibbs

to Joe Deaton was faxed to Susan Huffine-Athanasopoulos regarding the mistake in the calculation of the mileage reimbursement check issued on April 29, 2003.

28. On May 19, 2003, plaintiff was issued a mileage check, in the amount of $18.86, representative of the difference between $0.32 per mile and $.0365 per mile.

In order to prevail here, the plaintiff must prove there was some heightened tort. The undisputed material facts show the defendants promptly commenced their investigation of plaintiff's accident, including requesting medical information. The facts show plaintiff hired an attorney who, on or about December 11, 2002, wrote defendants, yet did not forward any medical records. Further, the undisputed material facts reveal that defendants first received medical findings supporting a disability on or about January 3, 2003. The undisputed materials facts further show the benefits were paid on or about February 5, 2003. This approximate one month delay is not a heightened tort.

The plaintiff could not cite any cases in which a one month delay constituted bad faith. Contrari-wise, numerous cases have held that a one month delay is not bad faith. In *Sansone v. Liberty Mutual Ins. Co.*, 2006 WL 286779 (S.D. Miss. 2006), the Court held a thirty-four day delay of investigation was not bad faith. In *Dauro v. Allstate*, 114 Fed. Appx. 130 (5th Cir. 2004), the Court held that a one month delay of payment was not bad faith. In *Pilate v. AmFed*, 865 So.2d 387 (Miss. App. 2004), the Court found that a one month delay of payment was not bad faith. Finally, in *Caldwell v. Alfa*, 686 So.2d 1092 (Miss. 1996), the Court found a six week delay of payment was not bad

faith.

As to the claims of bad faith concerning the calculation of compensation rate and mileage reimbursement payment, the plaintiff has simply put forth no facts to dispute defendants' handling of the claim. At best, one could say the defendants made a "mistake" which was promptly corrected upon notice and payment made. As to the delay in authorization of medical, the undisputed material facts show on their face that there was no delay, in fact, the contrary.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the defendants' Motion for Summary Judgment as to all claims is hereby granted and plaintiff's Complaint filed in this civil action is dismissed with prejudice. The court will enter a Final Judgment in accordance with the local rules.

SO ORDERED AND ADJUDGED, this the 25th day of March, 2008.

**s/ HENRY T. WINGATE**
**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:04-cv-889 HTW-LRA
Order Granting Summary Judgment